IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| PATRICK WOODS, #A1098289, | ) | CIV. NO. 11-00017 HG-KSC |
| Plaintiff, | ) | |
| vs. | ) | ORDER DISMISSING SECOND AMENDED COMPLAINT |
| ERNEST TAVARES, STACY KANEHAILUA, FRANCIS X. SEQUERIA, | ) | |
| Defendants. | ) | |

**ORDER DISMISSING SECOND AMENDED COMPLAINT**

The court has screened and dismissed Plaintiff's original and first amended complaints in this prisoner civil rights action pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915(A)(b)(1). *See* Docs. 6 & 10. The Magistrate Judge found that Plaintiff failed to state a claim against Defendants the Hawaii Department of Public Safety, Erine Tavares, and Francis Sequeira, and failed to cure the noted defects after amendment.

On April 18, 2011, Plaintiff filed a second amended complaint ("SAC"). Doc. No. 12. The SAC names Oahu Community Correctional Center's ("OCCC") Acting Warden Francis X. "Sequeria,"[1] OCCC Adult Correctional Officer ("ACO") Stacy Kanehailua, and ACO Sergeant Ernest Tavares as defendants (collectively, "Defendants"). Plaintiff again fails to state a

---

[1] The Court hereinafter refers to the correct spelling for Defendant's name: Francis Sequeira.

cognizable claim against for the violation of his constitutional rights. The SAC and action are therefore DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915(A)(b)(1). This dismissal may constitute a strike pursuant to 28 U.S.C. § 1915(g).

## I. BACKGROUND

In Count I of the SAC, Plaintiff states that, on November 9, 2010, he was working at his assigned prison job clearing weeds under the direction and supervision of ACO Kanehailua. Plaintiff was using a fixed blade brush cutter provided by the Hawaii Board of Water Supply for inmates in that day's work party.[2] Plaintiff alleges that this type of blade "is illegal for inmates to use pursuant to OCCC policy." Doc. 12, SAC at 5. The brush cutter's blade broke and a piece lodged in Plaintiff's left hand. Plaintiff reported his injury to Kanehailua who returned him to OCCC; thereafter Plaintiff was taken to the hospital where he was treated within three hours of the accident. Plaintiff states that Kanehailua's actions constituted deliberate indifference to his health and safety in violation of the Eighth Amendment.

In Count II, Plaintiff alleges that Warden Sequeira and Sergeant Tavares are vicariously liable for Kanehailua's actions. Plaintiff claims that Sequeira and Tavares knew or should have

---

[2] In his first amended complaint, Plaintiff said that he was working at the Board of Water Supply's reservoir. Doc. 10, FAC at 6.

known that the brush cutter was unsafe, "but made the choice not to correct . . . [the] Board of Water Supply's practice" of using "illegal saw blades." SAC at 6. Plaintiff claims that Sequeira's and Tavares's failure to check and maintain the brush cutter constituted deliberate indifference to his health and safety in violation of the Eighth Amendment.

In Count III, Plaintiff alleges that Defendants are "collectively [ ] responsible for the maintenance of equipment such as weed whackers . . . [and] showed deliberate indifference to [his] health and safety by not making sure that all material used by inmates are in good working condition and adequate safety equipment is being used at work [s]ites." SAC at 7.

## II. **LEGAL STANDARD**

Courts are required to perform an initial screening of all civil actions brought by prisoners with respect to prison conditions and/or that seek redress from a governmental entity or officer or employee of a governmental entity. The court must dismiss a complaint or portion thereof if its claims are legally frivolous or malicious, fail to state a claim on which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2);28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e (c)(1).

A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of a

cognizable legal theory; and (2) insufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other

"more likely explanations" for a defendant's conduct. *Id.* at 1951.

In screening a *pro se* complaint, the court must construe it liberally and must afford the plaintiff the benefit of any doubt. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). The court must accept all allegations of material fact as true and construe those facts in the light most favorable to the plaintiff. *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). Leave to amend should be granted if it appears at all possible that the plaintiff can correct the defects of his complaint. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000); *see also Karim-Panahi*, 839 F.2d at 623 (*pro se* litigant must be given leave to amend complaint unless it is absolutely clear that its deficiencies cannot be cured by amendment); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (same).

### III. **DISCUSSION**

"To sustain an action under section 1983, a plaintiff must show '(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right.'" *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (citation omitted); *West v. Atkins*, 487 U.S. 42, 48 (1988); 42 U.S.C. § 1983.

5

In the previous orders dismissing Plaintiff's original and first amended complaints, the court found that Plaintiff's allegations did not rise to the required showing of deliberate indifference under the Eighth Amendment, but rather, stated at most state law tort claims.

**A. Count I Fails to State a Claim**

The Eighth Amendment protects prisoners from inhumane conditions of confinement as well as inhumane methods of punishment. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). The prohibition against cruel and unusual punishment applies to all conditions within a prison, including work programs, medical care, housing facilities, security measures, etc. *See, e.g.*, *Rhodes v. Chapman*, 452 U.S. 337, 344-47 (1981). To be actionable, a prison official's conduct "must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *see also Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock"). "[D]eliberate indifference describes a state of mind more blameworthy than

negligence." *Farmer v. Brennan*, 511 U.S. 825, 835-36 & n.4 (1994); *Toguchi v. Chung*, 391 F.3d 1051, 1057(9th Cir. 2004).

An unsafe workplace alone does not equal a *per se* violation of the Eighth Amendment. *See Osolinski v. Kane*, 92 F.3d 934, 938 (9th Cir. 1996). In the context of prisoner working conditions, the Eighth Amendment is implicated only when a prisoner alleges that a prison official compelled him to "perform physical labor which [was] beyond [his] strength, endanger[ed his life] or health, or cause[d] undue pain." *Morgan*, 465 F.3d at 1045, *quoting Berry v. Bunnell*, 39 F.3d 1056 (9th Cir. 1994). Prison officials are liable for a prisoner's workplace injury only if they were deliberately indifferent to a substantial risk of serious harm. *Farmer*, 511 U.S. at 837 ("the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference"); *see Wilson*, 501 U.S. at 298-99, 302-03 (the official must actually know of the risk yet fail to take reasonable measures to ensure the prisoner's safety); *see also LeMaire v. Mass*, 12 F.3d 1444 (9th Cir. 1993). Even "[i]f a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk." *Farmer*, 511 U.S. at 834.

Although a prison official's conduct need not have been undertaken for the purpose of causing an inmate harm before it

7

violates the constitution, a "sufficiently culpable state of mind" requires that the conduct involve more than mere negligence. *Id.* at 837, 847 (nothing less than recklessness in the criminal sense, that is, subjective disregard of a risk of harm of which the actor is actually aware, satisfies the "deliberate indifference" element of an Eighth Amendment claim). If the risk of harm was obvious, the trier of fact may infer that a defendant knew of the risk, but obviousness *per se* will not impart knowledge as a matter of law. *Id.* at 840-42.

Nothing in the SAC suggests that Kanehailua acted with deliberate indifference, that is, with criminal recklessness, towards Plaintiff's health and safety. Plaintiff does not allege that Kanehailua knew or even suspected that the brush cutter was defective and nonetheless ordered or compelled him to continue using it. Rather, the facts, even as they have developed from the original Complaint to the SAC, support a simple, albeit undoubtedly dangerous and distressing, workplace injury. The bare facts as stated do not even make out a negligence claim against Kanehailua -- but simply allege that while Kanehailua was supervising a prison workline an inmate was injured using possibly faulty equipment. While Plaintiff may have a tort claim against OCCC or Board of Water Supply officials and employees, a prison guard cannot be said to have acted with deliberate

8

indifference simply because a workplace accident occurs on their watch.

Plaintiff implies that Kanehailua should have taken him directly to the hospital, rather than first to OCCC.[3] Although not explicit in the SAC, Plaintiff seems to suggest that, because Kanehailua returned Plaintiff to OCCC before Plaintiff was transported to a hospital, Kanehailua intentionally delayed Plaintiff's medical care. Deliberate indifference can be manifested by prison guards intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Estelle*, 429 U.S. at 104-05. When a prisoner alleges a delay in receiving medical treatment, however, he must also allege that the delay led to further injury. *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds, WMX Techs, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997); *Shapely v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

Plaintiff does not allege that the delay resulted in further injury. Even viewing the SAC in the light most favorable to Plaintiff and accepting each of his sparse allegations as true, Plaintiff states that only three hours passed between his

---

[3] In the FAC Plaintiff complained that OCCC policies should be revised so that an injured inmate is taken to the hospital immediately "no matter how *de minimus* the injury may be." FAC at 2.

9

injury and treatment.  An unincarcerated individual may be considered fortunate if he or she receives medical attention at a standard emergency room within that short a period of time. Without more, this time-span does not support a finding of deliberate indifference based on the delay.

Moreover, Kanehailua was supervising a "workline" of inmates, not just Plaintiff.  Common sense suggests that security concerns would require a prison guard to bring all of the inmates back to the prison when one inmate is injured, unless the emergency is so critical that an ambulance is required.  Such a policy takes into consideration security and allows the inmate's injury to be assessed by prison medical personnel, who can better determine whether the inmate should be taken to the hospital.  It does not support a claim of deliberate indifference, particularly when, as here, there are no allegations that the injury was so serious that immediate transport to the hospital was necessary and that Plaintiff suffered further injury due to a deliberate delay.

Finally, Plaintiff claims that OCCC policy makes the brush cutter's particular type of blade "illegal for inmates" to use.  Doc. 12, SAC at 5.  Plaintiff does not detail what prison policy makes this specific blade "illegal" for inmate use, or why.  The court assumes that Plaintiff is alleging that there is a prison policy directing that safety measures be taken when

10

inmates are using landscaping or other types of mechanical equipment. The fact that a piece of equipment malfunctioned, however, does not lead to the conclusion that Kanehailua or someone else acted with deliberate indifference to Plaintiff's safety, in contravention of a prison policy.

Although Plaintiff may be able to set forth a state law tort claim against some individual or agency based on his injury, he does not state a claim for the denial of his civil rights in violation of the Eighth Amendment based on the facts he has now alleged against ACO Kanehailua three times. Count I and its claims against ACO Kanehailua are DISMISSED for failure to state a cognizable constitutional violation.

**B. Counts II and III Fail to State a Claim**

In Count II, Plaintiff alleges that Defendants Sequeira and Tavares are responsible for Kanehailua's actions. Plaintiff seeks to hold Sequeria liable because he is the OCCC warden, and Tavares liable because he is Kanehailua's direct supervisor. He also claims that they knew or should have known of the faulty brush cutter blade and the "use of illegal saw blades, but made the choice not to correct this practice made by the Board of Water Supply and its employees." Doc. 12, SAC at 6. In Count III, Plaintiff alleges that Defendants are collectively liable for failing to ensure that the brush cutter was safe.

11

A supervisor is liable under § 1983 only on a showing of personal involvement in the constitutional deprivation or a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.  *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (*en banc*) (citation omitted).  That is, a plaintiff must allege that the supervisor "participated in or directed the violations, or knew of the violations and failed to act to prevent them."  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  A supervisor may also be liable for implementing "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."  *Redman*, 942 F.2d at 1446; *see Jeffers v. Gomez*, 267 F.3d 895, 917 (9th Cir.2001).

First, Plaintiff's allegations against Kanehailua do not state a claim for a violation under the Eighth Amendment.  As such, Sequeira and Tavares cannot be liable for a violation of Plaintiff's civil rights under a theory of supervisor liability based on Kanehailua's actions.

Second, Plaintiff presents no facts showing Sequeira's or Tavares's personal involvement in the events leading up to, during, or after his workplace accident.  Neither were present when Plaintiff was injured, neither instructed Kanehailua to compel Plaintiff to use an obviously unsafe piece of equipment, and neither was otherwise personally involved.  Nor does

Plaintiff allege that he alerted Sequeira, Tavares, Kanehailua, or any other prison official to the allegedly unsafe brush cutters but was nevertheless ordered to engage in the unsafe work.  *See Morgan*, 465 F.3d at 1046-47.  Plaintiff's conclusory statements that Tavares and Sequeira knew or should have know that the brush cutter was unsafe are wholly unsupported by any specific facts.  Plaintiff further undercuts Sequeira's and Tavares's knowledge and involvement in his injury by complaining that they failed to "correct . . . the Board of Water Supply and its employees" use of the particular type of brush cutter that injured Plaintiff.  Plaintiff does not explain, and this Court does not understand, what responsibility Sequeira and Tavares, who are employed by the Hawaii Department of Public Safety, had to maintain or supervise the Hawaii Board of Water Supply's landscaping equipment.

Finally, Plaintiff does not allege that Sequeira or Tavares instituted a policy that was the moving force of any alleged constitutional violation.  To the contrary, Plaintiff says that there is a policy at OCCC that inmates must use equipment that meets safety standards, and suggests that Kanehailua somehow violated that policy when he allowed Plaintiff to use the brush cutter.  If liberally construed, this statement might suggest Kanehailua was negligent and failed to follow prison workplace safety policies.  It does not support a finding

that Sequeira or Tavares instituted a constitutionally infirm policy that manifested deliberate indifference to any inmates' health and safety. Count II fails to state a claim against Sequeira and Tavares and is DISMISSED with prejudice.

Because Count III simply reasserts Plaintiff's allegation that all three Defendants were collectively deliberately indifferent to his health and safety, but provides no additional facts or claims, it is also DISMISSED with prejudice.

### IV. CONCLUSION

IT IS HEREBY ORDERED that:

(1) The SAC is DISMISSED for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(b) & 1915A(b)(1). Because Plaintiff has been given leave to amend his claims twice and has failed to adequately do so, this dismissal is with prejudice and without further leave granted to amend.

(2) This dismissal may be counted as a "strike" under 28 U.S.C. § 1915(g). *See McHenry v. Renne*, 84 F.3d 1172, 1177-79 (9th Cir. 1996).

//
//
//
//

(3) The Clerk is DIRECTED to enter judgment and terminate this action.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 9, 2011.



/S/ Helen Gillmor
_____
Helen Gillmor
United States District Judge

*Woods v. Dept. of Public Safety, et al.* CV11-00017 HG-KSC psas\Screening\dmp 2011\Woods 11-17 hg (dsms SAC w prej)